UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEJIA ESCALONA-MARTINEZ,

v.  Case No. 8:04-cr-335-T-17MSS
8:06-cv-1479-T-17MSS

UNITED STATES OF AMERICA.

O R D E R

This cause is before the Court on Defendant's timely-filed motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Cv-1; D-334). The Government filed a response. (Cv-4). Defendant has not filed a reply to the response.

PROCEDURAL HISTORY

In August 2004, a grand jury in the Middle District of Florida returned an indictment charging Mejia Escalona-Martinez with possessing with intent to distribute at least five kilograms of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. app. § 1903(a) and (g) and 21 U.S.C. § 960(b)(1)(B)(ii), and conspiracy to do the same, in violation of 46 U.S.C. app. § 1903(a), (g), and (j) and 21 U.S.C. § 960 (b)(1)(B)(ii). D-1. Escalona-Martinez pled guilty to both counts without benefit of a written plea agreement. D-152, 293 (change of plea hearing), D-172 (acceptance of plea). This Court sentenced him to 135 months imprisonment, to be followed by 36 months supervised release. D-280 (judgment) at 2-3, D-303 at 23-25.

Escalona-Martinez directly appealed the judgment and sentence (D-284) raising the

following issue:[1]

> Whether this Court clearly erred by declining to grant Escalona-Martinez a reduction for minor role pursuant to USSG § 3B1.2(b).

The Eleventh Circuit affirmed the judgment and sentence. United States v. Escalona-Martinez, No. 05-15280, 176 Fed. Appx. 74 (11th Cir. April 13, 2006). Escalona-Martinez now files a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 claiming this Court erred by not "considering his minor role adjustment" and the government "could have moved for a Fast-Track program adjustment" and that this Court "has the power to activate his departure through the Fast Track program." Cv-1 at 14, 17.

FACTUAL HISTORY

In July 2004, a United States Coast Guard helicopter spotted a 40-foot "go-fast" boat in the western Caribbean Sea. PSR ¶ 8. Coast Guard personnel observed eight people on board as well as bales and 55-gallon fuel drums. Id. Upon sighting the helicopter, the crew of the "go-fast" boat jettisoned about thirty bales as well as items of clothing. Id. Coast Guard personnel recovered sixteen of the jettisoned bales, each of which contained twenty kilograms of cocaine (for a total of 320 kilograms of cocaine). Id. ¶ 10. They arrested all eight crewmen of the "go-fast" boat, including Escalona-Martinez. PSR ¶ 9. One of the other crewmen claimed to be the captain or master of the boat. Id.

The probation office recommended that the district court not adjust Escalona-Martinez's guidelines offense level for any relative role in the offense. PSR ¶ 20. The PSR did not contain any information regarding the relative role of the eight persons involved in

---

[1] Copies of Escalona-Martinez's initial brief and the government's response brief are submitted as Attachment A and B respectively to the response.

Escalona-Martinez's offense, other than to report that one of those persons, Luis Spencer, had identified himself as the captain of the "go-fast" boat. See PSR. On advice of counsel, Escalona-Martinez did not discuss the offense with the probation office. See PSR ¶ 14.

Escalona-Martinez did not object to the facts in the PSR, stating only that he would argue he "qualifie[d] for a minor role reduction." See PSR addendum; D-303. At sentencing, he objected to the probation office's recommendation that he receive no adjustment for role pursuant to USSG § 3B1.2, stating:

> In arguing for minor role, I would argue the following: Your Honor, there were eight people on the go-fast boat. Three of those individuals were in charge of the drugs. They were . . . [co-defendants]. These three were to stay in Panama which this vessel was bound for nearby. These three were to stay in Panama with the drugs.
>
> The fourth one is Spencer. He's the captain. The fifth one is Xavier Filonas Rojas. He is the recruiter that recruited Mr. Escalona Martinez. Mr. Ramirez was on board not only to serve as a helmsman but he had special knowledge of . . . served as a mechanic, and which leaves only two people left. It leave[s] Mejia Escalona Martinez and [another co-defendant], which were the other two participants. All of the other eight members of the crew took turns at the helm. But that was the only job that Mejia Escalona Martinez had.
>
> The other--the six other people I just mentioned had other jobs as well. To stay back with the drugs, one of them was to be the mechanic. One of them was a recruiter. Mr. Escalona Martinez was not from the city of Medellin. He was from the island of San Andreas. He was recruited to go on the trip shortly before it left. He recruited no one. He never saw a weapon on board the boat. He did not operate a GPS. When he was not at the helm, he was doing nothing but sitting around.
>
> He did not help unload the drugs--he did not help load the drugs on to the boat before it left because everything was on board when he arrived. He was never asked to unload the drugs after it reached its destination in Panama. For those reasons, Your Honor, this defendant can be distinguished from the others in terms of his role on that boat.

D-303 at 12-13. In response to this Court's question, defense counsel then conceded that all eight persons on the "go-fast" boat with the cocaine had been "helmsmen." Id. at 13.

3

The probation office then reiterated that the information the probation office had had established that Escalona-Martinez had been "alone with six other co-defendants [who] acted as crew members, one person identified as Louis Spencer was the captain." Id. at 13.

The government declined to "to make a statement or to present any information on mitigation of [Escalona-Martinez's] sentence[,]" the defense, however, raised arguments regarding sentence mitigation based on Booker and 18 U.S.C. § 3553(a) factors with this Court. Id. at 17. Defense counsel asked this Court to "consider the nature and circumstances of the offense and history of the characteristics of the defendant[,]" specifically his family circumstances, that he "had cooperated as much as he could with authorities, although the cooperation has not resulted in a 5K1.1," and lastly, the unlikelihood that he would "reoffend" nor would he return to the United States. Id. at 18-20. Relying on Booker and FanFan, defense counsel implored this Court to take into account Escalona-Martinez's "lack of guidance, the socioeconomic status, his family ties and responsibilities, his education level in fashioning his sentence." Id. at 21. Defense counsel did not present any evidence to this Court at sentencing, and Escalona-Martinez did not testify other than to apologize for his actions in an attempt to mitigate his sentence. Id. at 12-17.

This Court overruled Escalona-Martinez's objection regarding his role in the offense, noting that "[w]hatever number of people that were on the vessel[, t]hey weren't there . . . as stowaways or passengers. They were there to fulfill a role . . . ." Id. at 15. This Court further explained the fashioning of the sentence, "I'm giving you the low end of the guideline range which I think is fair and complies with Booker FanFan and complies with 3553 and

the test. I repeat again, this is a serious crime." Id. at 22.

## DISCUSSION

Escalona-Martinez argues that this Court erred by failing to consider him eligible for a minor role adjustment and that the government or this Court could have applied the Fast Track program to grant him a downward departure as part of his sentence. Both claims are not cognizable on collateral relief grounds for the reasons discussed below.

**1. Minor Role**

Escalona-Martinez's assertion that this Court failed to award him minor role without establishing a constitutional violation is unavailing. Most of the courts of appeals have held that "[b]arring extraordinary circumstances," claims of nonconstitutional error in the application of the Sentencing Guidelines cannot be raised in a Section 2255 motion. United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999); see Buggs v. United States, 153 F.3d 439, 443 (7th Cir. 1998); Burke v. United States, 152 F.3d 1329, 1331-32 (11th Cir. 1998); United States v. Payne, 99 F.3d 1273, 1281-82 (5th Cir. 1996); Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996); Auman v. United States, 67 F.3d 157, 160-61 (8th Cir. 1995); United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994); Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994). But cf. United States v. Talk, 158 F.3d 1064, 1069 (10th Cir. 1998) (assuming without deciding that claim of nine-level Guideline error that would reduce 108-month sentence by more than fifty months is cognizable).

Collateral review pursuant to 28 U.S.C. § 2255 is not a substitute for direct appeal. See Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004); Burke v. United States, 152 F.3d 1329, 1331-32 (11th Cir. 1998) (citing Sunal v. Large, 332 U.S. 174, 178 (1947)).

Nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" Reed v. Farley, 512 U.S. 339, 348 (1994) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). An allegation that a given sentence is contrary to the sentencing guidelines is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice. See Burke, 152 F.3d at 1331-32 (collecting cases); see also United States v. Diaz-Clark, 292 F.3d 1310, 1316 n.4 (11th Cir. 2002) (expressing doubt whether claim concerning sentencing guidelines misapplication would be cognizable even if not successive).

### 2. Fast Track

Similarly, Escalona-Martinez's contention that this Court could have considered Fast Track sentencing fails when he raises the claim without establishing a constitutional violation for the perceived error. More to the point, Escalona-Martinez did not and does not qualify retroactively for consideration under the Fast Track program. Escalona-Martinez's claim is facially deficient because he seeks a downward departure without implicating a constitutional or jurisdictional issue regarding his sentence.

Fast Track programs originated in California where the number of illegal reentry cases was overwhelming the resources to prosecute the violators.[2] The practice was formalized by Congress' enactment of section 401(m)(B) of the PROTECT Act in 2003

---

[2] "Thirteen of the 94 federal districts have 'early disposition' or 'fast track' programs for illegal reentry cases: Arizona, California (Central, Southern, Eastern and Northern districts), Idaho, Nebraska, New Mexico, North Dakota, Oregon, Texas (Southern and Western districts), and the Western District of Washington." United States v. Mejia, No. 05-3903-cr, 2006 WL 2411384 at *3 (2d Cir. August 22, 2006).

which led to the Sentencing Commission's establishment of a downward departure under USSG § 5K3.1 based on an early disposition program authorized by the Attorney General. "The directive apparently was motivated by the large volume of immigration cases presented for prosecution in certain judicial districts, and the perceived need for an administrative mechanism to permit more efficient processing of these cases." See United States v. Hernandez-Fierros, 453 F.3d 309, 311 n.2 (6th Cir. 2006). In participating districts, the government seeks to obtain pre-indictment pleas through written plea agreements which offer defendants lower sentences through plea bargaining or downward departure motions and those defendants agree to waive their rights to file pretrial motions, to appeal, and to seek collateral relief (except for ineffective assistance of counsel). See United States v. Perez-Pena, 453 F.3d 236, 238 (4th Cir. 2006) and United States v. Castro, 455 F.3d 1249, 1251 (11th Cir. 2006). Section 5K3.1's Policy Statement, which became effective on October 27, 2003, provides that, "[u]pon motion of the Government, the court may depart downward not more than 4 levels . . . . "

      At the time of Escalona-Martinez's sentencing in September 2005, no such formal early disposition or fast track program existed in the Middle District of Florida. Even if the program had existed, it is clear that Escalona-Martinez would not have qualified for a discretionary § 5K3.1 departure because the government had not received the benefit from an early disposition, nor did Escalona-Martinez enter into a written plea agreement, and finally, this was not an illegal reentry prosecution but instead was a serious drug prosecution involving 320 kilograms of cocaine. Nonetheless, nothing in the record indicates that this Court believed it lacked jurisdiction to depart based on Booker and 18 U.S.C. § 3553(a) factors. D-303 at 17. To the contrary, in denying Escalona-Martinez's

motion to depart, this Court considered his request but found that a departure was not warranted--"I'm giving you the low end of the guideline range which I think is fair and complies with Booker[,] FanFan and complies with 3553 and the test." Id. at 22. Moreover, the Eleventh Circuit has held that any sentencing disparity "created by section 5K3.1 does not fall within the scope of section 3553(a)(6)" based on Congressional intent that such disparity was warranted and agreed with other circuits in determining that "section 3553(a)(6) does not require the district court to depart based on the availability of the departure in only some districts." Castro, 455 F.3d at 1252-53. The record in this case establishes that this Court was aware of its authority to depart but found that departure was not warranted.

In this case, Escalona-Martinez has not raised any constitutional issue regarding the determination of his role in the offense or denial of his request for a downward departure, and he has not claimed that any error in this case (assuming that there is one) constitutes a "'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" Reed, 512 U.S. at 348. Escalona-Martinez's rehashing of arguments previously raised at sentencing and on direct appeal concerning what role he played on the boat are unavailing. His assertion that he should have been considered for fast track disposition is incorrect. He wrongly asserts that the government or this Court should give him a benefit that he does not qualify for nor deserves. Moreover, he has failed to make any constitutional claim that would disturb this Court's prior determinations at sentencing.

## PRIOR RESOLUTION

Escalona-Martinez argues that this Court erred by failing to consider him eligible for

a minor role adjustment. Escalona-Martinez is not entitled to review of his role in the offense, however, because the Eleventh Circuit already has decided it. "[O]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be relitigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977)); see also Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court will not reconsider an issue already decided on direct appeal). On direct appeal, Escalona-Martinez has already argued this Court's denial of a minor role adjustment to his base offense level.

Prior resolution bars reconsideration of Escalona Martinez's claim that the Court erred in denying his request for a downward departure in light of his alleged minor role in the offense. Escalona-Martinez raised this claim on direct appeal and, as discussed above, the Eleventh Circuit resolved the issue against him on April 13, 2006, in Appeal No. 05-15280, United States v. Escalona-Martinez, No. 05-15280, 176 Fed. Appx. 74 (11th Cir. 2006). D-331. Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a Section 2255 proceeding. Davis v. United States, 417 U.S. 333 (1974); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981).

In its unpublished opinion, the Eleventh Circuit stated:

Applying the first part of De Varon, the relevant conduct for which he was held accountable was the weight of the bales discarded from the go-fast boat, determined to weigh 320 kilograms. There, his actual and relevant conduct were the same.

\* \* \*

> With respect fo the second part of the De Varon analysis, there is insufficient evidence to show that Escalona-Martinez was a minor participant in comparison to others. . . . Here, the only persons identifiable from the evidence are Escalona-Martinez and the seven other crew members of the vessel. Escalona-Martinez claims that he was a helmsman whose role was limited to taking turns piloting the vessel. However, neither the presentence investigation report nor the sentencing hearing reveal any evidence of each crew member's role, and Escalona-Martinez failed to show that his responsibilities aboard the vessel were less vital to the enterprise than those of any other crew members. Therefore, the district court did not clearly err by refusing to grant a minor role reduction.

D-331 at pp. 3-4. Escalona-Martinez has established no extraordinary circumstance that would justify reconsideration of this claim. See Schlup v. Delo, 513 U.S. 298 (1995); Davis v. United States, 417 U.S. 333 (1974). Therefore, Escalona-Martinez's claim is procedurally barred.

Likewise, Escalona-Martinez is not entitled to relief on his claim that that the government or this Court could have applied the Fast Track program to grant him a downward departure as part of his sentence because he has procedurally defaulted this claim. Ordinarily, claims that previously were available and were not raised in a prior proceeding are procedurally defaulted and barred from consideration on collateral review. See Bousley v. United States, 523 U.S. 614, 622-24 (1998); United States v. Frady, 456 U.S. 152, 166 (1982); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001). When a defendant raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause and actual prejudice resulting from the error or actual innocence to excuse the defaults. McCoy, 266 F.3d at 1258-59. To show cause for not raising a claim in an earlier proceeding, a Defendant must show "some external impediment preventing counsel from constructing or raising the claim." See High v. Head, 209 F.3d 1257, 1262-63 (11th Cir. 2000) (quoting

McCleskey v. Zant, 499 U.S. 467, 497 (1991)). To establish prejudice, the Defendant must prove that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." See Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal quotations omitted). This is a heavier burden than the burden of establishing plain error on appeal. See Frady, 456 U.S. at 164. The futility of raising a claim does not constitute sufficient cause to excuse the default. Bousley, 523 U.S. at 623; Jones v. United States, 153 F.3d 1305, 1307-08 (11th Cir. 1998).

Accordingly, the Court orders:

That Escalona-Martinez's motion to vacate (Cv-1; D-334) is denied.  The Clerk is directed to enter judgment against Escalona-Martinez in the civil case and to close that case.

ORDERED at Tampa, Florida, on October 3, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

USA:  Joseph K. Ruddy
Pro se:  Majia Escalona-Martinez